No. 47,978

STATE OF KANSAS, *Appellee*, v. DOUGLAS H. BURKS, *Appellant*.

(553 P. 2d 328)

Opinion filed July 23, 1976.

*Hosea Ellis Sowell*, of Kansas City, argued the cause and was on the brief for the appellant.

*Dennis L. Harris*, Deputy District Attorney, argued the cause, *Curt T. Schneider*, Attorney General, and *Nick A. Tomasic*, District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: On February 23, 1973, the Nelson Pharmacy at 9th and Armstrong, Kansas City, Kansas, was robbed by three men, at least two of whom were armed with small caliber handguns. Defendant-appellant, Douglas Burks, was charged and convicted by a jury of three counts of aggravated burglary (K. S. A. 21-3427) as a result of his alleged participation in the incident. Also convicted in the same trial was David Jackson, whose appeal to this court is reported as *State v. Jackson*, 218 Kan. 491, 543 P. 2d 901.

The evidence adduced at trial showed that at 3:45 p. m. on the date mentioned three armed individuals entered the east door of the pharmacy and ordered everyone in the store to get on the floor. One of the men then jumped over the counter and began going through the cash registers. The robbers also went to the narcotics cabinet and proceeded to remove various drugs. While the men were looking through some pill bottles the pharmacist heard one of them ask, "Where is the Tuinal?" He pointed in a particular direction and then heard more bottles being rattled. At some point during the robbery one of the men opened the pharmacy safe, triggering an automatic silent alarm.

The robbers took over $100.00 from the store's cash registers and a sum less than $50.00 and three bank deposit slips from the pharmacist's billfold. Also, during the course of the robbery a total of $80.00 was taken from the person of a customer, Ernestine Anderson; a yellow pocketknife from Forrest Anderson, another customer; and three dollars from Steve Gunya, an employee.

After procuring the cash and other articles the three men exited through the same east door they had used to enter the store. Gunya testified he heard the bells ring on the east door, indicating the robbers' departure, and in "just a matter of seconds" heard tires squealing. He then jumped and saw a police car going backwards down Armstrong Street.

The police car, which timely arrived at the crime scene, was driven by Officer Duane A. Lee of the Kansas City Police Department. He testified he arrived at the location at approximately 3:45 p. m. and observed three Negro males exiting the east door of Nelson's Pharmacy. Defendant was identified by Officer Lee as being one of these men and was carrying a large brown plastic shopping bag. When Lee yelled to the men to halt, they took off running. He pursued in reverse gear in his patrol car. During the chase one of the men escaped and the defendant dropped the bag he was carrying in a neighboring yard. Lee maintained visual contact with the defendant and David Jackson and chased the pair into an alley near the Kansas City Star Building. He said he lost sight of the pair for only a few seconds, when they went behind a garage, but immediately regained visual contact.

At this point in time Officer Timothy J. Hausback was converging on the alley from another direction. As he entered the alley he observed the two suspects running down the alley, but they stopped when they saw him. The individuals then jumped over a wall and ran into a nearby garage. Hausback pursued the pair into the garage and observed the defendant digging a hole in the dirt floor with his hands. When he said "Police" and told them to raise their hands the defendant put his gun in the hole and Jackson dropped his gun. In addition to recovering the weapons, a total of $123.25; a yellow pocketknife; and three deposit slips were taken from Jackson's pockets.

Richard Hood, a reporter for the Kansas City Star, who happened to be in the alley that afternoon for an unrelated reason, was able to corroborate much of the officers' testimony.

At the trial Lee was able to identify the defendant and his co-defendant, David Jackson, as two of the men he saw running from the pharmacy. However, none of the other witnesses at the crime scene saw the robbers long enough to be able to give a positive identification. These witnesses only knew the robbers were black.

Following a denial of defendant's motions for a judgment of acquittal and for a new trial, he brings the instant appeal wherein he contends that the prosecution prejudiced the jury by using evidence that was of an ambiguous and circumstantial nature which could not be admitted and was prejudicial to the defendant. In this point defendant refers to the three deposit slips allegedly taken from the pharmacist, Tony Distefano, and found by police officers on the person of defendant's accomplice, David Jackson. The trial court excluded these exhibits, finding:

". . . There is nothing on these exhibits to indicate that these were deposited to the account of Nelson Pharmacy, and even Mr. Distefano could not positively identify these. . . ."

After the removal of these items from the jury's consideration, there is no indication in the record that further reference thereto was made by the state.

Essentially, the same point of error was presented as point three in the *Jackson* appeal wherein it was treated as a question of prosecutorial misconduct. The excluded evidence was said not to be inherently inflammatory and references to it were not prejudicial. Tested by what was said concerning a similar claim in *State v. Campbell*, 210 Kan. 265, 500 P. 2d 21, we held Jackson's contention to be without merit. What was said in the *Jackson* opinion is equally applicable here.

Defendant next contends the trial court erred in failing to sequester the jury because one of the state's witnesses was a reporter for the Kansas City Star who covers criminal trials in Wyandotte County. The point is identical to the first contention raised in *Jackson*. What was said in dismissing the contention in the *Jackson* appeal applies with equal force in the case at bar.

Defendant states his next contention in these words:

"Trial publicity was highly unfavorable to the defendant because one of the State's witnesses was Richard Hood, Reporter for The Kansas City Star."

He argues that the jury was subjected to undue influence, to-wit:

". . . Because of his employment jurors would rely heavily on Mr. Hood's integrity and his access to records and information."

There was no trial publicity reproduced in the record and defendant fails to support his contention by any showing of actual prejudice. Defendant cites no authority for the disqualification of a witness merely because he happens to be a newspaper reporter. The contention is without merit.

In his next two contentions, defendant challenges the aiding and abetting instruction given by the trial court and asserts that he should not have been charged on three counts for his participation in what he says was only one transaction. The identical contentions were considered and held to be without merit in the *Jackson* opinion.

Defendant's final contention is that the state failed to sustain its burden of proof. There is likewise no merit in this point. The defendant and David Jackson were caught with the robbery weapons and part of the proceeds of the crime after a hot pursuit immediately following the commission of the crimes. The police maintained practically unbroken visual contact with defendant and Jackson from the crime scene to the place of arrest, and observed defendant drop the plastic bag he was carrying in a nearby yard. With this physical evidence and the undisputed testimony of the police officers in the state's case, the jury could not reasonably have found the defendant to be innocent.

The evidence is to be viewed within the context of our long-standing rule governing appellate review of criminal cases which was restated in the recent case of *State v. Brown,* 217 Kan. 595, 538 P. 2d 631, where we held:

"In a criminal case, the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state." (Syl. 5.)

The judgment is affirmed.