No. 112,019

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JACK R. LAPOINTE,
*Appellee*.

SYLLABUS BY THE COURT

1.

The State's right to appeal on a question reserved in a criminal case is only available after final judgment.

2.

Interlocutory appeals, in which the State can appeal district court rulings on matters that are not final, are limited to the specific situations listed in K.S.A. 2014 Supp. 22-3603.

3.

When the district court grants a motion for DNA testing under K.S.A. 2014 Supp. 21-2512, the statute provides for additional proceedings in the district court if the DNA testing is favorable to the defendant. One possible outcome is an order for a new trial, which is neither a final order nor an appealable nonfinal order. Because a district court's grant of a motion for DNA testing leaves open the possibility for further proceedings, the State may not appeal that order.

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed July 17, 2015. Dismissed.

*Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Richard Ney*, of Ney & Adams, of Wichita, for appellee.

Before LEBEN, P.J., SCHROEDER and GARDNER, JJ.

LEBEN, J.: In 2004, Jack R. LaPointe was convicted of aggravated robbery and aggravated assault based on a robbery of a Payless shoe store. Because he had prior convictions, he received a lengthy sentence—245 months.

In 2014, LaPointe filed a motion requesting postconviction DNA testing of evidence found near the scene of the crime. He cited K.S.A. 2014 Supp. 21-2512(a), (c), which provides for DNA testing when a defendant has been convicted of first-degree murder or rape and the court determines that testing may produce evidence showing that the defendant was wrongfully convicted. The district court granted LaPointe's motion under *State v. Cheeks*, 298 Kan. 1, 6-14, 310 P.3d 346 (2013), a case in which our Supreme Court held that the Equal Protection Clause of the United States Constitution requires that DNA testing be allowed for defendants who are similarly situated to those convicted of murder or rape. The State has appealed to this court upon a question reserved, arguing that the district court erred in ordering the testing.

But we lack jurisdiction to consider the State's appeal. The State's right to appeal on a question reserved applies only to a *final* judgment. See *State v. Grimes*, 229 Kan. 143, 146-47, 622 P.2d 143 (1981); *State v. Puckett*, 227 Kan. 911, 912, 610 P.2d 637 (1980). At the time the State filed its appeal, the DNA-testing aspects of this case were still pending, and the district court had not entered final judgment. The court had ordered

2

DNA testing, and the statute under which that testing had been ordered provided that the court consider whether a new trial should be ordered if the testing proved favorable to the defendant. See K.S.A. 2014 Supp. 21-2512(f)(2). We therefore dismiss the State's appeal.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2004, a jury found LaPointe guilty of aggravated robbery and aggravated assault based on the robbery of a Payless shoe store in October 2000. *State v. LaPointe* (*LaPointe I*), No. 93,709, 2006 WL 2936496, at *1 (Kan. App. 2006) (unpublished opinion), *rev. denied* 283 Kan. 932 (2007). On October 30, 2000, the police were informed that a white male in a plaid shirt, jacket, and bandana had robbed the Payless store. The police used a dog to search for evidence of the crime, and the dog led them to a plaid shirt, hat, and blue bandana at various locations around an apartment complex behind the strip mall where the Payless store was located. The police also found a pair of cloth gloves at the apartment complex.

At LaPointe's trial, Brandy Loveall testified that she had seen a man walking quickly down the sidewalk at the strip mall carrying a gun and wearing a bandana and that she had later identified LaPointe as that man in a police lineup. Michael Norton told the jury that he and LaPointe had intended to commit a robbery and that he had driven the getaway car while LaPointe robbed the Payless store.

A chemist who had conducted DNA testing on evidence in the case also testified. She said she had found hairs on the bandana, shirt, cap, and gloves but that she had not recovered enough DNA to develop a profile. Robert Booth, a criminalist at the Kansas City, Missouri, Police Department Crime Laboratory, testified that he had done a hair analysis comparing the hairs found on the bandana, shirt, cap, and gloves to LaPointe's hair and found that they did not match. He said that he could not say with certainty that they were not LaPointe's but that "the probability [was that it was] not his hair." Booth

3

explained that his comparison testing did not definitively establish that the head hairs did not come from LaPointe because he had only a sample of LaPointe's hair and because LaPointe could have changed something about his hair since the hairs were deposited. Nevertheless, Booth testified that those two scenarios were rare and that the "the most likely outcome" was that the hairs were not LaPointe's. During closing argument, defense counsel emphasized that no physical evidence linked LaPointe to the crime.

The jury nevertheless convicted LaPointe, and he was sentenced to 245 months in prison, which would run consecutively to sentences in three other cases. LaPointe appealed his convictions to this court, which affirmed them in 2006. *LaPointe I*, 2006 WL 2936496, at *3.

Since then, LaPointe has sought postconviction relief on multiple occasions. We will skip the earlier filings and discuss only the motion that led to this appeal, which was filed in February 2014.

This motion sought postconviction DNA testing in LaPointe's criminal case. Specifically, he asked for mitochondrial DNA testing pursuant to K.S.A. 2014 Supp. 21-2512. That statute provides for postconviction DNA testing if it might produce relevant evidence showing that the petitioner was wrongfully convicted or sentenced:

> "[A] person in state custody, at any time after conviction for murder in the first degree . . . or for rape . . . may petition the court that entered the judgment for forensic DNA testing . . . of any biological material that:
>
> (1) Is related to the investigation or prosecution that resulted in the conviction;
>
> (2) is in the actual or constructive possession of the state; and

4

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(c) The court shall order DNA testing . . . upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 2014 Supp. 21-2512(a), (c).

The same statute provides for the possibility of *further* proceedings after the DNA testing is completed. Indeed, if the results of the testing are favorable to the defendant and there is a reasonable probability that the results would change the outcome of the case, the court must provide the defendant with relief, such as a new trial:

"(2) If the results of DNA testing conducted under this section are favorable to the petitioner and are of such materiality that a reasonable probability exists that the new evidence would result in a different outcome at a trial or sentencing, the court shall:

(A) Order a hearing, notwithstanding any provision of law that would bar such a hearing; and

(B) enter any order that serves the interests of justice, including, but not limited to, an order:

(i) Vacating and setting aside the judgment;

(ii) discharging the petitioner if the petitioner is in custody;

(iii) resentencing the petitioner; or

(iv) granting a new trial." K.S.A. 2014 Supp. 21-2512(f)(2).

5

In May 2014, the district court granted LaPointe's motion for DNA testing. In support of its order, the district court cited *State v. Cheeks*, 298 Kan. 1, 310 P.3d 346 (2013), a case in which the Kansas Supreme Court determined that the Equal Protection Clause of the United States Constitution dictates that DNA testing should be allowed for defendants who are "similarly situated" to those convicted of murder or rape (the convictions for which the statute authorizes postconviction DNA testing). The district court found that LaPointe was similarly situated to people convicted of first-degree murder or rape because he was sentenced to more than 20 years in prison, which was comparable to or greater than potential sentences for those crimes. Before the DNA testing was done, the State then filed this appeal of the district court's decision.

The DNA testing was completed while this appeal has been pending. The results confirmed that LaPointe was not the source of one hair. The results from a second hair were inconclusive, but the report stated that it was more likely that LaPointe was not the source of the DNA than that the result was inconclusive.

In February 2015, LaPointe filed a motion for hearing with the district court based on the test results. LaPointe asked that he either be discharged from custody or granted a new trial. At the time LaPointe filed his appellate brief in this case, his motion for a hearing was pending before the district court. Since he filed that brief, the district court has determined that the postconviction DNA evidence was not so important to the case that there was a reasonable probability that the new evidence would result in a different outcome at a trial or sentencing. On that basis, the district court refused to grant a new trial or other relief to LaPointe.

LaPointe filed a notice of appeal of the district court's decision to deny him relief based on the test results. That appeal has been separately docketed in our court as case No. 113,580 and is not pending before this panel.

6

ANALYSIS

The State has appealed the district court's order for DNA testing under K.S.A. 2014 Supp. 21-2512. LaPointe argues that we lack jurisdiction to reach the merits of the State's arguments because the State does not have authority to appeal the district court's decision to order DNA testing. The State counters that it has authority to file this appeal as a question reserved—a type of appeal that allows the State to obtain review of a trial court's adverse ruling on a legal issue if the issue is of statewide interest, is important to the correct and uniform administration of criminal justice, and otherwise would not be subject to appellate review. See *State v. Tremble*, 279 Kan. 391, 393, 109 P.3d 1188 (2005); *State v. Ruff*, 252 Kan. 625, 629, 847 P.2d 1258 (1993); *State v. Pearce*, 51 Kan. App. 2d 116, 121-22, 342 P.3d 963 (2015).

We have jurisdiction to consider appeals only in the manner prescribed by statute. *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010). K.S.A. 2014 Supp. 22-3602(b) lists the instances in which the State can appeal as a matter of right, including upon a question reserved:

> "Appeals to the court of appeals may be taken by the prosecution from cases before a district judge . . . as a matter of right in the following cases, and no others:
>
> "(1) From an order dismissing a complaint, information or indictment;
>
> "(2) from an order arresting judgment;
>
> "(3) *upon a question reserved by the prosecution*; or
>
> "(4) upon an order granting a new trial in any case involving a class A or B felony or for crimes committed on or after July 1, 1993, in any case involving an off-grid crime." (Emphasis added.)

7

So the statute, K.S.A. 2014 Supp. 22-3602(b)(3), does provide jurisdiction to consider a State appeal on a question reserved. Questions reserved are not used to determine whether the trial court committed error because "an appellate court's answer to a State's question reserved has no effect on the defendant in the underlying case." *State v. Berreth*, 294 Kan. 98, 123, 273 P.3d 752 (2012). Rather, we decide a question reserved because the matter is of statewide importance. *Pearce*, 51 Kan. App. 2d at 122.

But our Supreme Court has said that a question-reserved appeal is only available after a final judgment. See *State v. Grimes*, 229 Kan. 143, Syl. ¶ 2, 622 P.2d 143 (1981); *State v. Puckett*, 227 Kan. 911, Syl. ¶ 1, 610 P.2d 637 (1980). A question-reserved appeal presupposes that the case has concluded but that an answer to a legal question is necessary to determine future cases. *Berreth*, 294 Kan. at 124.

The *Puckett* and *Grimes* cases both show that only a final judgment may be appealed by the State on a question reserved. In *Puckett*, the district court allowed the defendant to withdraw his pleas and then returned the case to the jury-trial calendar. 227 Kan. at 911. The State appealed the order allowing the defendant to withdraw his plea, and the Kansas Supreme Court held that it lacked jurisdiction to consider the merits of the case because no final judgment had been entered. 227 Kan. at 912-13. The court stated that appeals as a matter of right by the State inherently require a final judgment, so the State's appeal was interlocutory and could not be decided because it did not fit the categories listed in another statute that provided for interlocutory appeals by the State. 227 Kan. at 912-13.

In *Grimes*, a jury had found the defendant guilty of aggravated battery, but the district court granted a new trial based on an erroneous jury instruction. 229 Kan. at 144. The State appealed the order granting a new trial, and the Kansas Supreme Court again dismissed the appeal, finding that the appeal was interlocutory and that K.S.A. 1980

8

Supp. 22-3602(b)(3)—which is substantially the same as the current statute providing jurisdiction for questions reserved—did not authorize interlocutory appeals by the State. 229 Kan. at 146-47. Thus, under *Puckett* and *Grimes*, for the State to appeal upon a question reserved as a matter of right, it must be appealing a final judgment. See *Grimes*, 229 Kan. at 146-48; *Puckett*, 227 Kan. at 912.

Here the State argues that there has been a final judgment in LaPointe's case. Criminal judgments become final after both a conviction and a sentence, and LaPointe was convicted and sentenced approximately a decade ago. See *State v. Hall*, 298 Kan. 978, 988, 319 P.3d 506 (2014). The State notes that in *Puckett* and *Grimes*, the defendants had not been convicted and sentenced.

But we are not dealing with the original criminal judgment here; we are dealing with an order for DNA testing. When the court ordered DNA testing, there remained an ongoing proceeding in which K.S.A. 2014 Supp. 21-2512(f)(2), part of the statute authorizing DNA testing, left open the possibility of a further order for new trial.

We know now that the district court did not order a new trial (even though the DNA testing was favorable to LaPointe). But at the time the State filed its appeal, the district court retained authority to consider a request for new trial if the testing was favorable to LaPointe. In *Grimes*, the State could not appeal an order for new trial. Here, we only had the entry of an order that *could have led to* an order for a new trial.

Appellate courts do not provide piecemeal reviews of every routine evidentiary ruling that is adverse to the State, and the district court here had not finished its proceedings when the State appealed. The State's appeal here is akin to an interlocutory or interim appeal of an order granting a pretrial motion, such as one granting a psychological evaluation of an alleged victim of a child sex crime, which the State could not appeal before trial unless it would somehow serve to suppress evidence at trial. See

*Sales*, 290 Kan. at 136; *State v. Dearman*, No. 110,798, 2014 WL 3397185, at *3 (Kan. App. 2014) (unpublished opinion) (citing *State v. Berriozabal*, 291 Kan. 568, Syl. ¶¶ 4-5, 243 P.3d 352 [2010]; *State v. Price*, 275 Kan. 78, 80, 61 P.3d 676 [2003]).

We do have limited jurisdiction to consider *some* interlocutory appeals by the State, but only the appeal of certain orders—orders quashing a warrant or a search warrant or orders suppressing evidence, a confession, or an admission. K.S.A. 2014 Supp. 22-3603. As was the case in *Grimes*, in this case, the State is not challenging one of the orders listed in K.S.A. 2014 Supp. 22-3603. Accordingly, neither the statute that provides for State appeals as a matter of right, K.S.A. 2014 Supp. 22-3602(b), nor the statute that provides for interlocutory appeals by the State, K.S.A. 2014 Supp. 22-3603, provides jurisdiction for this appeal.

The State makes one final argument in favor of jurisdiction. It says that "[i]f LaPointe's petition filed within the criminal case number is analogous to a civil case, then appellate jurisdiction still exists." The State notes that our appellate courts have considered requests for DNA testing in civil appeals and that K.S.A. 2014 Supp. 21-2512 says a person in custody may "petition" for DNA testing. It argues that if this case is analogous to a civil case, LaPointe's request for DNA testing is like a request for an injunction (an order to do a particular act) or a mandamus proceeding (a proceeding to compel someone or something to perform a specified duty). See K.S.A. 60-801; K.S.A. 60-901.

The State points out that its notice of appeal cited both K.S.A. 2014 Supp. 22-3602(b), which provides for appeals by the State in criminal cases on questions reserved, *and* K.S.A. 2014 Supp. 60-2102(a)(2), which provides for appeals as a matter of right from orders granting or refusing injunctions and granting or refusing mandamus or habeas corpus relief. But the notice of appeal said specifically that the State was appealing upon a question reserved: "This appeal is taken to the Court of Appeals of the

10

State of Kansas upon a question reserved pursuant to K.S.A. 22-3602(b)(3), K.S.A. 60-2101(a) and K.S.A. 60-2102(a)(2)." Moreover, in its opening brief, the State based its claim of appellate jurisdiction solely on the existence of a question reserved under K.S.A. 2014 Supp. 22-3602(b)(3).

To now consider this appeal on the ground that it is "analogous to a civil case," we would have to ignore the State's stated basis for jurisdiction in its notice of appeal and opening brief and recharacterize LaPointe's "motion for post-conviction DNA testing," which was filed by counsel in his criminal case, as a civil petition for mandamus or injunction. The State does not obtain the right to appeal on a question reserved in a criminal case simply because the procedure used might be analogous to a civil proceeding.

In sum, we do not have authority to consider this appeal. The appeal is therefore dismissed.